# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

MICHAEL HENDERSON,

        Plaintiff,

v.

ANDREW SAUL, Commissioner of

Social Security,[1]

        Defendant.

Civil Action No. 17-2846 (CKK)

## MEMORANDUM OPINION
(October 28, 2019)

Plaintiff Michael Henderson brings this suit seeking review of Defendant Commissioner Andrew Saul's final administrative decision denying his claim for Supplemental Security Income ("SSI") pursuant to 42 U.S.C. § 405(g). Pending before the Court are Mr. Henderson's Motion for Judgment of Reversal, ECF No. 14, and the Commissioner's Motion for Judgment of Affirmance and Opposition to Plaintiff's Motion for Judgment of Reversal, ECF No. 15. Upon consideration of the briefing,[2] the administrative record, and the relevant legal authorities, the Court shall

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Andrew Saul is substituted as Defendant for former Acting Commissioner Nancy A. Berryhill.

[2] The Court's consideration has focused on the following documents:

- Plaintiff's Brief in Support of Motion for Judgment of Reversal ("Pl.'s Mot."), ECF No. 14-1;
- Defendant's Memorandum in Support of Her Motion for Judgment of Affirmance and in Opposition to Plaintiff's Motion for Judgment of Reversal ("Def.'s Combined Mem. and Opp'n"), ECF No. 15; and
- Plaintiff's Reply Brief in Support of Motion for Judgment of Reversal ("Pl.'s Reply"), ECF No. 17.

In an exercise of its discretion, the Court finds that holding oral argument in this action would not be of assistance in rendering a decision. *See* LCvR 7(f).

**GRANT IN PART** and **DENY IN PART** Mr. Henderson's Motion for Judgment of Reversal and **GRANT IN PART** and **DENY IN PART** the Commissioner's Motion for Judgment of Affirmance.

## I. BACKGROUND

Mr. Henderson petitioned the Social Security Administration for SSI on April 25, 2013. Pl.'s Mot. at 1; Administrative Record ("A.R.") ECF No. 11, at 70, 82. To qualify for SSI, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment" coupled with an inability to "engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(1)–(2). By satisfying both conditions, a claimant is "disabled" for the purposes of the Social Security Act. To decide whether a claimant has proven he is disabled, the ALJ must use a five-step sequential analysis. 20 C.F.R. §§ 404.1520, 416.920. The ALJ determines (1) the claimant's current work activity, (2) the severity of his impairments, (3) whether the impairments meet or equal listed impairments, (4) if not, whether the impairment prevents the claimant from doing past work, and (5) whether the impairment prevents him from doing other work upon consideration of the claimant's residual functional capacity ("RFC"), age, education, and past work experience. *See* 20 C.F.R. §§ 404.1520, 416.920; *Butler v. Barnhart*, 353 F.3d 992, 997 (D.C. Cir. 2004). The claimant carries the burden on the first four steps, but the burden shifts to the agency on step five. *Butler*, 353 F.3d at 997 (citing 20 C.F.R. §§ 404.1520, 416.920).

In his application for SSI, Mr. Henderson alleged that his disabilities included diabetes, lung cancer, and various issues with his kidneys and back. A.R. at 70, 82. He was forty-eight and

a resident of Washington, D.C. at the time.[3]  *Id.*  His claim was initially denied on February 18, 2014.  *Id.* at 80 ("While you are not capable of performing work you have done in the past, you are able to perform work that is less demanding."); Pl.'s Mot. at 1 (noting denial).  It was denied again upon reconsideration on July 31, 2014.  A.R. at 97 ("We have determined that your condition is not severe enough to keep you from working. . . . we have determined that you can adjust to other work."); Pl.'s Mot. at 1–2 (noting denial).  Following these denials, Mr. Henderson requested a hearing before an Administrative Law Judge ("ALJ").  Pl.'s Mot. at 2; A.R. at 124.

The records also indicate that several physicians and a mental health specialist evaluated Mr. Henderson during the period of alleged disability.  Three of those examiners are most relevant to Mr. Henderson's arguments: Dr. Rebecca Brosch, Dr. Elliot Aleskow, and Dr. Joel Taubin.  First, Dr. Brosch, Psy.D., evaluated Mr. Henderson on July 22, 2014.  A.R. at 487.  Her evaluation notes included what Mr. Henderson told her, her own observations, and her ultimate medical source statement.  A.R. at 487–92.  To begin with, she explained that Mr. Henderson told her that it was a "recurring pattern for him" to be "fired or laid off from almost all of his jobs" because of "his inability to control his temper" and being generally aggressive toward others.  *Id.* at 487.  Mr. Henderson reported "significant anger and aggression, impulsivity, [and] inability to control his temper," as well as "paranoid ideation," which resulted in him "lashing out at others."  *Id.* at 488.  During the evaluation, he presented as "irritable, suspicious, and distressed," and he had difficulty relating or making eye contact.  *Id.* at 489.  His speech was "[f]luent and clear" and he had "[g]enerally coherent and goal directed" thought processes, although he "presented as somewhat paranoid."  *Id.*  Mr. Henderson exhibited "emotional distress, anxiety, and nervousness" in his

_____

[3] When he first petitioned for SSI, Mr. Henderson contended that his impairments rendered him unable to work effective December 31, 2009.  A.R. at 70.  He later altered the onset date to February 1, 2012 at his hearing.  A.R. at 13, 35.

evaluation and was "tearful throughout a significant portion of the evaluation." *Id.* at 490. Consequently, Dr. Brosch thought his attention and concentration skills were impaired. *Id.*

Dr. Brosch ultimately opined that Mr. Henderson "appear[ed] to be able to follow and understand simple directions." *Id.* at 490–91. She also outlined her other findings:

> Mild to moderately limited in his ability to perform simple tasks. Moderately limited in his ability to maintain attention and concentration. He appears to be able to maintain a schedule. Mild to moderately limited in his ability to learn new tasks. Moderate to markedly limited in his ability to perform complex tasks independently. Markedly limited in his ability to make appropriate decisions, relate adequately with others, and appropriately deal with stress. His difficulties are caused by mood disturbance, impulse control problems, anger management difficulties, impulsivity, and paranoid ideation.

*Id.* at 491. She explained that these issues "may significantly interfere with the claimant's ability to function on a daily basis." *Id.*

Second, Dr. Aleskow, M.D., evaluated Mr. Henderson on November 25, 2013. A.R. at 443. Dr. Aleskow's evaluation focused on what Mr. Henderson reported, rather than on his own opinions. *See* A.R. at 443–45. Among other things, Dr. Aleskow noted that Mr. Henderson complained of "tingling and numbness in his hands and feet," which led to him sometimes having "difficulty handling and carrying objects because of the numbness." *Id.* at 443. Mr. Henderson told Dr. Aleskow that he had "intermittent resting tremors." *Id.* Dr. Aleskow's examination also revealed that Mr. Henderson had "a resting tremor," which was "worse on the right than the left," and that he had "4/5 hand grip strength bilaterally, but had some difficulties with fine motor skills in both hands." *Id.* at 444–45. Dr. Aleskow's final discussion further stated that Mr. Henderson had "a tremor of unknown etiology." *Id.* at 445.

Third, Dr. Taubin, M.D., evaluated Mr. Henderson on January 23, 2014. A.R. at 452. Dr. Taubin similarly noted that Mr. Henderson had "a fine tremor of his right hand" and that his right hand was "tremulous," leading to "difficulty writing with the hand." *Id.* at 454. According to Dr.

Taubin, Mr. Henderson had "3/5 [grip] on the right and 5/5 on he left." *Id.* He also stated, however, that Mr. Henderson "wrote his name on the card with no difficulty." *Id.* In his final impressions, Dr. Taubin explained that Mr. Henderson had a "[t]remor of the right hand" and a "[h]istory of a tremor." *Id.* at 455. He concluded that Mr. Henderson could not "use fine dexterity because of [the] tremor of his right hand." *Id.*

Following his evaluations and the previous denial of his claim, Mr. Henderson's video hearing occurred on June 28, 2016. A.R. at 13; Pl.'s Mot. at 2. At the hearing, Mr. Henderson was represented by counsel and a vocational expert ("VE"), Patricia L. Chilleri, testified. A.R. at 13, 31–32, 53. The VE did not provide any pre-hearing report. Pl.'s Mot. at 17 n.7. Counsel for Mr. Henderson objected to the VE testifying, alleging that she lacked qualifications. A.R. at 54. When questioned about what other work Mr. Henderson could perform, the VE referenced jobs as described in the Dictionary of Titles ("DOT") and provided national numbers for those jobs. *Id.* at 57. She identified three jobs in particular: weigher, checker, and measurer (sample DOT code 299.587-010) with approximately 24,400 jobs nationwide; sorter, sampler, tester, and inspector (sample DOT code 789.687-146) with approximately 16,500 jobs nationwide; and billing, packing, and wrapping worker (sample DOT code 920.687-138) with approximately 19,300 jobs nationwide. *Id.*

The ALJ did not question the methodology by which the VE determined the job numbers provided. *See id.* at 54–58. Counsel for Mr. Henderson did question how the VE determined those job numbers:

> Q    Okay and what methodology or process did you use to reach the conclusions of the number of jobs available in the national economy for the sample jobs you presented today?
>
> A    Well, I use government publications, starting with the DOT and supplements and then work with the Bureau of Research and Statistics and the Labor Market Analysts in obtaining information from the American

> Community Survey and the Long Term Occupational Employment
> Projections and I also utilize source[s] such as SkillTRAN and the
> Northeast—the Northern American Occupational System and
> Classification.

*Id.* at 60.[4]  Counsel for Mr. Henderson concluded by requesting that the record be left open to

submit a post-hearing brief.[5]  The ALJ granted that request and left the record open for an

additional fourteen days.  *Id.* at 61–62.

Mr. Henderson subsequently submitted an eight-page post-hearing brief with objections to

the VE's testimony.  *See id.* at 252–60.  In addition to objecting to the VE's qualifications again,

the brief detailed other objections, most of which appeared to argue that the VE's testimony was

unreliable for numerous reasons.  First, Mr. Henderson contended that some of the resources used

by the VE were not reliable government publications, which can be administratively noticed by

the ALJ, and were instead private programs or resources.  *Id.* at 252–53.  Moreover, Mr. Henderson

explained, because the DOT has not been updated in decades, there is no reliable or consistent way

to translate current job data from the Department of Labor and U.S. Census Bureau to the DOT

titles.  *Id.* at 253.  As the VE did not explain which programs from SkillTRAN she used, Mr.

Henderson listed objections to all three commercially available programs: Job Browser Pro,

Occubrowse, and OASYS.  *Id.* at 253–57.  He additionally objected on the basis that the jobs

discussed at the hearing are no longer performed at the unskilled level identified by the VE, and

because those same jobs required more social interaction than identified by the VE.  *Id.* at 257–59.

Lastly, he objected to a decision being made without an additional hearing to address these

questions raised about the VE's testimony.  *Id.* at 259.

---

[4] The original transcript used underlined text to describe some of the sources.  The Court has
omitted this formatting here.

[5] This request was also included in the pre-hearing brief that Mr. Henderson submitted.  A.R. at
247 (requesting thirty days).  The pre-hearing brief explained that the request was related to
researching and responding to any VE testimony.  *Id.*

The ALJ issued a decision that denied Mr. Henderson's claim for benefits on October 26, 2016. *Id.* at 13–23. Before beginning the five-step analysis, the ALJ addressed some of Mr. Henderson's objections. *Id.* at 13. First, the ALJ overruled his "objection to the vocational expert's testimony regarding jobs numbers and the expert's methodology in determining jobs numbers." *Id.* He explained that:

> Social Security Administration regulation requires the undersigned to take administrative notice of reliable job information available from various publications, including the [DOT] and other government sources, used by the vocational expert in this case (SSR 00-4p; 20 C.F.R. 404.1566(d) and 416.966(d)). Moreover, the Social Security Administration uses vocational experts because they are qualified to resolve complex vocational issues, such as testifying about the number of jobs available in the national economy from information produced by the Bureau of Labor Statistics. The undersigned relies on Social Security regulations 20 C.F.R. 404.1560(b)(2), 404.1566(d), and 416.966(d) and takes administrative notice of this job data.

*Id.* The ALJ further overruled Mr. Henderson's objection that, in the decision's language, "the jobs identified by the vocational expert at the hearing are no longer available." *Id.* The ALJ emphasized that he took "administrative notice of the reliable job information available" in the DOT and in "one or more of the publications identified in" the regulations as "reliable sources" that were relied upon by the VE. *Id.* at 14. Lastly, the ALJ denied Mr. Henderson's request for a supplemental hearing because his "representative had ample opportunity to question the vocational expert at the hearing." *Id.*

After addressing the objections, the decision laid out the ALJ's findings. First, the ALJ found that Mr. Henderson had not been engaged in substantial gainful activity since his application date. *Id.* at 16. Next, the ALJ found that Mr. Henderson had several severe impairments: "chronic obstructive pulmonary disease[] ('COPD'), diabetes mellitus, diabetic neuropathy, obesity, hypertension, lumbar radiculopathy, and affective disorder." *Id.* Then, the ALJ found that Mr. Henderson did not have any impairment or combination of impairments that met "the severity of

one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 416.920(d), 416.925 and 416.926)." *Id.* The ALJ made several specific relevant findings here. With respect to Mr. Henderson's physical health, the ALJ did not address at this step the tremors that the consultative physicians described. *See id.* at 16–17. Instead, the ALJ concluded that Mr. Henderson had a "mild restriction" in the "activities of daily living" based on his daily activities. *Id.* at 17. The ALJ further found that Mr. Henderson had moderate difficulties with social functioning and moderate difficulties with "concentration, persistence or pace." *Id.*

In determining Mr. Henderson's RFC, the ALJ found that Mr. Henderson had "the [RFC] to perform light work," except that he "must avoid unprotected heights and dangerous machinery." *Id.* at 18. Mr. Henderson could "frequently use his bilateral hands for fine manipulation and gross handling" and was "limited to simple, routine tasks, with a specific vocational preparation of 2 or below, with few workplace changes." *Id.* Additionally, the ALJ concluded that Mr. Henderson could "have occasional interaction with co-workers and supervisors, but [could] never interact with the general public" and "should not engage in any tandem, team, or group work activity." *Id.*

The ALJ detailed his findings, some of which are relevant here. To begin with, in discussing Mr. Henderson's affective disorder and mental health, he noted that Mr. Henderson had "never received any mental health treatment and is not taking any mental health medication, which is inconsistent with his allegations and suggests that his symptoms may not be as severe as has been alleged." *Id.* at 20. The ALJ outlined the ultimate findings of consultative examiner Rebecca Brosch, PsyD, and concluded that "[t]he undersigned has accounted for any possible limitations resulting from the claimant's affective disorder in his residual functional capacity." *Id.*

Next, the ALJ proceeded to explain the weight given to various medical opinions. *Id.* at 20–222. In particular, he gave "little weight to the opinion of the consultative examiner, Dr. Joel

Taubin," who had opined that Mr. Henderson could not "use fine dexterity because of tremor of his right hand." *Id.* at 21. The ALJ also explained that he gave "substantial weight to the opinion of consultative examiner, Dr. Rebecca Brosch, that the claimant appear[ed] to be able to follow and understand simple instructions." *Id.* While the ALJ referenced consultative physician Dr. Aleskow's report throughout his decision, he did not detail all of Dr. Aleskow's report or explicitly explain what weight he had given his opinion in particular. *See, e.g.*, *id.* at 19 (mentioning what Mr. Henderson told Dr. Aleskow regarding abilities abilities).

At steps four and five, the ALJ found that Mr. Henderson was unable to perform any past relevant work, but that there were "jobs that exist in significant numbers in the national economy that" he could perform. *Id.* at 22. In his step five discussion, the ALJ listed the three representative occupations provided by the VE at the hearing and quoted the jobs numbers provided by the VE. *Id.* at 23. The ALJ wholly relied on the testimony of the VE in determining whether Mr. Henderson could perform other jobs that exist in significant numbers nationally. *Id.*

Mr. Henderson sought review of the ALJ's determination by the Appeals Council, which found no basis to grant the request for review. A.R. at 1–5. Having exhausted his administrative remedies, Mr. Henderson has brought this action seeking judicial review.

## II. LEGAL STANDARD

The Social Security Act defines "disability" as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Inability to engage in substantial gainful activity not only includes the individual's inability to do his previous work, but also requires as well an inability, "considering his age, education, and work experience, [to] engage in any other

kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." *Id.* § 423(d)(2)(A). In making this determination through the previously outlined five-step process, the ALJ is to consider medical data and findings; expert medical opinions; subjective complaints; and the claimant's age, education, and work history. *See Davis v. Heckler*, 566 F. Supp. 1193, 1196 (D.D.C. 1983).

On judicial review, "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. §§ 405(g). Under the substantial evidence standard, a court considers whether there is sufficient evidence in the administrative record to support the Commissioner's factual determinations. Substantial evidence is "'more than mere scintilla'" and means only "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The test can be satisfied by "something less than a preponderance of the evidence." *Fla. Mun. Power Agency v. FERC*, 315 F.3d 362, 366 (D.C. Cir. 2003). In reviewing an administrative decision, a court may not determine the weight of the evidence, nor can it substitute its judgment for that of the Secretary if his decision is based on substantial evidence. *Butler*, 353 F.3d at 999; *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Instead, the reviewing court must carefully scrutinize the entire record to determine whether the Secretary, acting through the ALJ, has analyzed all the evidence and has sufficiently explained the weight he has given to obviously probative material. *Butler*, 353 F.3d at 999; *Hays*, 907 F.2d at 1456. "Because the broad purposes of the Social Security Act require a liberal construction in favor of disability, the court must view the evidence in the light most favorable to the claimant." *Martin v. Apfel*, 118 F. Supp. 2d 9, 13 (D.D.C. 2000).

The reviewing court must also determine whether credible evidence was properly considered by the ALJ. *Id.* The ALJ's final decision must contain a statement of "findings and conclusions, and the reasons or the basis therefor, on all the material issues of fact, law, or discretion presented on the record." 5 U.S.C. § 557(c). An ALJ cannot merely disregard evidence that does not support his conclusion. *See Dionne v. Heckler*, 585 F. Supp. 1055, 1060 (D. Maine 1984). A reviewing court should not be left guessing as to how the ALJ evaluated probative material and it is reversible error for an ALJ to fail in his written decision to explain sufficiently the weight he has given to certain probative items of evidence. *Martin*, 118 F. Supp. 2d at 13. In short, the ALJ must "build an accurate and logical bridge from the evidence to [his] conclusion so that, as a reviewing court, we may assess the validity of the agency's ultimate findings and afford a claimant meaningful judicial review." *Lane-Rauth v. Barnhart*, 437 F. Supp. 2d 63, 67 (D.D.C. 2006) (internal quotation marks omitted) (quoting *Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002)).

### III. DISCUSSION

Mr. Henderson advances three grounds on which the ALJ's decision should be reversed and remanded for further administrative proceedings. First, he contends that the ALJ erred either by not meaningfully addressing Mr. Henderson's post-hearing objections or explaining his reliance on the VE's testimony. Pl.'s Mot. at 4–17. Second, he claims that the ALJ did not properly weigh the opinion of consultative examiner Dr. Brosch. *Id.* at 19–24. Lastly, he argues that the ALJ erred by not making any findings regarding Mr. Henderson's tremors at step two and by insufficiently addressing Dr. Taubin's and Dr. Aleskow's opinions regarding his tremors. *Id.* at 24–28.

<u>A. The ALJ's Failure to Explain His Reliance on the Vocational Expert and Address Mr. Henderson's Objections</u>

Mr. Henderson's first argument, which concerns the ALJ's response to his objections, breaks down into two distinct arguments. First, he argues that the ALJ made a procedural error in insufficiently addressing Mr. Henderson's objections in the ultimate decision. He suggests that he is owed procedural due process and that the process owed to him is embedded in the agency's own manual, which required that the agency respond to *all* objections raised. *See, e.g.*, *id.* at 4 ("[The ALJ] still erred by failing to address potentially outcome-determinative objections to the testimony of the vocational expert before relying on this testimony to deny benefits."); *id.* at 9 ("Again, Plaintiff's assignment of error is that the ALJ was required to substantively address his objections (because, as Plaintiff explains next it is facially relevant to the ALJ's step 5 burden) and did not.").

Second, he alternatively contends that the ALJ's failure to address his objections and his summary reliance on the VE's testimony in the face of those objections precludes meaningful judicial review. *See, e.g.*, *id.* at 5 (explaining that alleged error "require[es] remand because it undermines the ALJ's step 5 finding that there is other work the claimant can do, and effectively precludes meaningful judicial review"); *id.* at 13–14 (outlining how ALJ did not explain whether VE testimony was reliable in response to objections calling into question reliability); *id.* at 17 ("Ultimately, the ALJ's failure to properly address an outcome-determinative objection to the VE's testimony precludes meaningful judicial review as to whether the ALJ's step 5 finding is supported by substantial evidence.").

The Court agrees with Mr. Henderson that the ALJ's treatment of his objections, and his summary reliance on the VE's testimony despite those objections, precludes meaningful review.

The Court therefore does not reach Mr. Henderson's procedural due process argument.[6]

The ALJ plays an important role in the disability determination process. "In a disability proceeding, the ALJ 'has the power and the duty to investigate fully all matters in issue, and to develop the comprehensive record required for a fair determination of disability.'" *Simms v. Sullivan*, 877 F.2d 1047, 1050 (D.C. Cir. 1989) (quoting *Diabo v. Sec'y of HEW*, 627 F.2d 278, 281 (D.C. Cir. 1980)). An ALJ may "receive evidence" and "examine witnesses" about contested issues in a hearing and may even receive evidence that "would not be admissible in court." 42 U.S.C. §§ 405(b)(1), 1383(c)(1)(A); 20 C.F.R. §§ 404.950(c), 416.1450(c). In other words, the ALJ serves as "an examiner charged with developing the facts," *Richardson v. Perales*, 402 U.S. 389, 410 (1971), and he has a duty to "develop the arguments both for and against granting benefits," *Sims v. Apfel*, 530 U.S. 103, 111 (2000).

This carries over into step five of the sequential analysis, in which the agency has the burden "to demonstrate that the claimant is able to perform 'other work' based on a consideration of [his] 'residual functional capacity' (RFC), age, education and past work experience." *Butler*,

---

[6] The Commissioner argues that Mr. Henderson's objections were waived because they were not raised at the hearing, only in the post-hearing briefing. Because this Court decides the case on the basis that the ALJ failed to provide sufficient reasoning on step five, the Court does not reach this argument. However, it is worth noting that it is far from clear that the objections were waived, as the ALJ specifically allowed the record to stay open for post-hearing briefing and further ruled on at least some of the objections in his decision. The cases cited by the Commissioner do not suggest otherwise. In each of those cases, there was no attempt by the claimant's representative to preserve any objections by asking to leave the record open and neither did the ALJ rule on the objections at issue. *See Liskowitz v. Astrue*, 559 F.3d 736, 744 (7th Cir. 2009) (explaining that claimant raised issue for first time in reply brief); *Hammond v. Chater*, 116 F.3d 1480 (Table), at *3 (6th Cir. 1997) (noting that plaintiff did not raise issue at hearing); *Harris v. Comm'r of Soc. Sec. Admin.*, No. 1:11-CV-1290, 2012 WL 4434078, at *3–*4 (N.D. Ohio Sept. 24, 2012) (explaining that plaintiff waived argument by not raising it during hearing at all).

353 F.3d at 997; *see* 20 C.F.R. §§ 404.1520(f), 416.920(f).  As part of this determination, the ALJ can "take administrative notice of **reliable** job information available from various governmental and other publications," including the DOT.  20 C.F.R. § 404.1566(d) (emphasis added).  For guidance on whether jobs exist in the national economy, "ALJs often seek the views of 'vocational experts,'" who are "professionals under contract with SSA to provide impartial testimony in agency proceedings."  *Biestek*, 139 S. Ct. at 1152 (internal quotation marks omitted); *see* 20 C.F.R. §§ 404.1560(b), 404.1566(e), 416.966(e); SSR 00-4p.  The evidence presented by VEs can include information from outside the DOT, including "other reliable publications, information obtained directly from employers, or from a VE's or VS's experience in job placement or career counseling."  SSR 00-4p.

On review, however, the ALJ's reliance on such an expert must still clear the substantial evidence standard, which is determined on a case-by-case basis.  *See Biestek*, 139 S. Ct. at 1157 (finding that vocational expert's withholding of documentary basis for opinion may sometimes "prevent [such] testimony from qualifying as substantial evidence" and noting that this inquiry is "case-by-case"); *Donahue v. Barnhart*, 279 F.3d 441, 446 (7th Cir. 2002) (explaining that testimony from vocational expert is not substantial if it is not reliable and is "conjured out of whole cloth").  And "with regard to an ALJ's reasoning the Court may only consider the grounds proffered by the agency in its decision" and can neither credit "post hoc rationalizations" offered by the parties nor weigh the evidence for itself.  *Settles v. Colvin*, 121 F. Supp. 3d 163, 169–70 (D.D.C. 2015) (internal quotation marks omitted) (quoting *Espinosa v. Colvin*, 953 F. Supp. 2d 25, 33 (D.D.C. 2013); *see also SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947) ("[A] simple but fundamental rule of administrative law . . . is to the effect that a reviewing court, in dealing with a determination or judgment which an administrative agency alone is authorized to make, must judge

the propriety of such action solely by the grounds invoked by the agency."); *Clark v. Astrue*, 826 F.

Supp. 2d 13, 20 (D.D.C. 2011) ("[A] court may only consider the grounds proffered by the agency

in its decision, as post hoc rationalizations will not suffice.").  Accordingly, the ALJ must build

"an accurate and logical bridge from the evidence to [his] conclusion" to afford a reviewing court

the opportunity to provide the claimant with "meaningful judicial review."  *Lane-Rauth*, 437 F.

Supp. 2d at 67 (internal quotation marks omitted) (quoting *Scott*, 297 F.3d at 595).

        In light of the objections raised by Mr. Henderson, the decision failed to meet this standard.

While the ALJ does not necessarily have an affirmative duty to question every VE regarding her

methodology, objections by a claimant may call into question the reliability of a VE's testimony.

*See, e.g.*, *Biestek*, 139 S. Ct. at 1157; *Lynch v. Astrue*, 358 F. App'x 83, 88 (11th Cir. 2009);

*Haskins-Scott v. Saul*, No. 6:18-CV-975-ORL-CPT, 2019 WL 3956195, at *4 (M.D. Fla. Aug. 22,

2019); *Courtney v. Berryhill*, 385 F. Supp. 3d 761, 763–64 (W.D. Wis. 2018).  That is the case

here:  Mr. Henderson raised numerous detailed objections in his post-hearing brief that questioned

the reliability of the evidence relied upon by the VE and her methodology.  *See* A.R. 252–60.

Although the merits of these objections are not before the Court, they appear to be thoroughly

researched concerns raised by the claimant about the VE's methodology in determining jobs

numbers.  *See supra* Part I (discussing objections in more depth).  Despite these objections, the

ALJ relied on the VE's testimony.  Yet the ALJ neither explained his decision in any meaningful

way nor built a record to support that decision that would allow this Court to meaningfully review

it.

        Overall, the decision's treatment of Mr. Henderson's objections was conclusory.  Take, for

example, the objection that Mr. Henderson highlights in his Motion.  He objected on the basis "that

the jobs named by the vocational expert are no longer performed as unskilled jobs."  Pl.'s Mot. at

11; *see* A.R. at 257. It is unclear whether the ALJ addressed this objection, as the decision does not frame its rulings in those terms. Instead, the ALJ overruled the "objection that the jobs identified by the vocational expert at the hearing are no longer available," by which he may have meant to overrule this objection. A.R. at 13. But Mr. Henderson did not make an objection fitting that description. Either the ALJ overruled an objection that was not raised, misunderstood Mr. Henderson's objection, was imprecise in his ruling, or did not rule on that objection at all. Any of these options precludes this Court from meaningfully reviewing both the ALJ's overruling of Mr. Henderson's objections and the ALJ's ultimate decision.[7] The same is true of Mr. Henderson's other objections, several of which also may have gone unaddressed by the ALJ. *Compare* A.R. at 252–60 (listing objections), *with id.* at 13–14 (appearing to address only two objections or categories of objections).

The rest of the ALJ's explanation of his reliance, especially in light of Mr. Henderson's objections, is also lacking. For instance, the ALJ was unclear as to which publications he noticed other than the DOT.[8] *See* A.R. at 13–14, 22–23. He described them as "other government

---

[7] The ALJ similarly overruled Mr. Henderson's "objection to the vocational expert's testimony regarding jobs numbers and the expert's methodology in determining jobs." A.R. at 13. It is possible based on these broad descriptions that the ALJ was trying to overrule Mr. Henderson's objection regarding the jobs' skill levels (or overruling all his objections in this vein). But the fact that it is unclear on the face of the decision whether the ALJ meant to overrule this objection is problematic, as the Court consequently cannot say whether these decisions were based on substantial evidence. *See Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005) ("In addition to relying on substantial evidence, the ALJ must also explain his analysis of the evidence with enough detail and clarity to permit meaningful appellate review.").

[8] In addition, the ALJ explained that he was required "to take administrative notice of reliable job information available" from the DOT. A.R. at 13. But it is unclear that the ALJ *must* take administrative notice of information from the DOT. Other courts have found that reliance on or taking administrative notice of the DOT and other similar government publications was not supported by substantial evidence in certain circumstances because the DOT was outdated or unreliable. *See, e.g.*, *Cunningham v. Astrue*, 360 F. App'x 606, 615 (6th Cir. 2010) (explaining that while Commissioner can take administrative notice of DOT, "common sense dictates that when such descriptions appear obsolete, a more recent source of information should be

sources," "this job data," and "one or more of the publications identified by 20 C.F.R. 404.1566(d) and 416.966(d)," but he never specified exactly which sources he was discussing. A.R. at 13–14. This presents several issues. First, this lack of clarity on its own precludes the Court from meaningfully reviewing the ALJ's decision because it cannot determine whether the ALJ's decision was based on substantial evidence. *See Freeman v. Astrue*, 816 F. Supp. 2d 611, 615 (E.D. Wis. 2011) ("An ALJ must minimally articulate his reasons for crediting or rejecting evidence of disability build[ing] an accurate and logical bridge from the evidence to his conclusion." (internal quotation marks and citations omitted) (quoting *Clifford v. Apfel*, 227 F.3d 863, 870 (7th Cir. 2000))). Second, not all the job information provided by or relied upon by the VE was a publication identified in the regulations. The VE testified that she uses information from the North American Industry Classification Systems[9] and SkillTRAN, which are not government publications listed in the regulations, and are thus not necessarily presumed to be reliable. A.R. at 60 (not describing these two resources as government publications); *see* 20 C.F.R. §§ 404.1566(d), 416.966(d). It is unclear to what extent the VE relied upon these sources in determining jobs numbers as compared to solely government publications, but if the ALJ did in fact intend to administratively notice this information, it is also uncertain on what basis he found that information—and the VE's methodology in using that information—reliable, which is similarly problematic. *See Sams v. Berryhill*, No. 1:17CV15-CAS, 2017 WL 3974239, at *7 (N.D. Fla. Sept. 8, 2017) ("Reliability is the guiding star when considering job information relied on by the ALJ in determining whether there are jobs in significant numbers in the national economy that the Plaintiff can perform when the RFC is considered.").

---

consulted").
[9] The VE referred to this as the "Northern American Occupational System and Classification." A.R. at 60.

In short, the ALJ failed to meaningfully explain why he relied on the VE despite Mr. Henderson's objections. Nor did he develop any record supporting his reliance in light of those objections. Nothing in the record reflects that the ALJ consulted the VE on, for instance, the resources upon which she relied or her methodology. In fact, he denied Mr. Henderson's request for a supplemental hearing to address the concerns raised in his objections. A.R. at 14. The ALJ, however, must develop the record and adequately explain his reasoning to allow meaningful review. *See, e.g.*, *Chavez v. Berryhill*, 895 F.3d 962, 970 (7th Cir. 2018) ("The ALJ needed to do more than just ask questions; she needed to hold the VE to account for the reliability of his job-number estimates."), *cert. denied*, 139 S. Ct. 808 (2019); *Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013) ("Remand may be appropriate, however, where . . . inadequacies in the ALJ's analysis frustrate meaningful review."); *Kastner v. Astrue*, 697 F.3d 642, 646 (7th Cir. 2012) ("If a decision 'lacks evidentiary support or is so poorly articulated as to prevent meaningful review,' a remand is required." (quoting *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002))); *Hanna v. Astrue*, 395 F. App'x 634, 636 (11th Cir. 2010) ("The ALJ must state the grounds for his decision with clarity to enable us to conduct meaningful review."); *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1226 (9th Cir. 2009) ("[M]eaningful review of an administrative decision requires access to the facts and reasons supporting that decision."). This is especially the case on step five, where the agency has the burden; to do otherwise would "effectively and impermissibly shift[] the burden" to the claimant. *Chavez*, 895 F.3d at 970; *see also Haddock v. Apfel*, 196 F.3d 1084, 1090 (10th Cir. 1999) ("To relieve the ALJ of the burden to thoroughly develop the vocational evidence at step five would shift the burden to the claimant in the form of a requirement to cross-examine the vocational expert.").

In other circumstances, the ALJ's decision to rely on a VE based solely on her expertise

may present no issue. *See, e.g.*, *Bryant v. Comm'r of Soc. Sec.*, 451 F. App'x 838, 839 (11th Cir. 2012) ("The Social Security regulations provide that an ALJ may rely on a VE's knowledge and expertise, and they do not require a VE produce detailed reports or statistics in support of her testimony."). But in this case, where there were on-the-record objections questioning the reliability of the VE's methodology, that decision effectively precludes meaningful judicial review. Ultimately, the ALJ must develop the record and provide a sufficient bridge from the record to the decision so that a reviewing court can determine whether his reliance on the VE was supported by substantial evidence. Failure to do so is cause for remand. *See Nunley v. Berrihill*, No. CV H-17-0072, 2018 WL 1167700, at *9 (S.D. Tex. Feb. 14, 2018) (recommending remand because ALJ failed to "develop the record on the reliability of the VE's testimony" or provide "specific findings on the reliability of either SkillTRAN or the VE's job-incidence testimony to fulfill the Commissioner's step-five burden"), *report and recommendation adopted sub nom. Nunley v. Colvin*, No. CV H-17-00072, 2018 WL 1122679 (S.D. Tex. Mar. 1, 2018); *Pedone v. Berrihill*, No. 16-CV-02767-STV, 2018 WL 460063, at *8 (D. Colo. Jan. 18, 2018) (finding that remand was appropriate because ALJ failed to develop record by questioning VE about SkillTRAN's reliability based on post-hearing objections and further failed to provide sufficient reasoning for meaningful review); *Russell v. Berrihill*, No. 16-CV-1251-JPG-CJP, 2017 WL 3704354, at *6 (S.D. Ill. Aug. 28, 2017) (remanding case because ALJ failed to develop record on why VE's testimony was reliable or provide reasoning in decision or response to claimant's objections).

Because the ALJ failed to do so here, this case must be remanded for rehearing. The Court's remand is narrow and limited only to the step five analysis of whether there is other work that Mr. Henderson could perform.

B. The ALJ's Discussion of Dr. Brosch's Opinion

Second, Mr. Henderson argues that the ALJ failed to properly account for portions of consultative psychological examiner Dr. Brosch's opinions. Pl.'s Mot. at 19–24. He contends that the ALJ gave the opinion "substantial weight" but failed to include "numerous likely work-preclusive limitations found by Dr. Brosch in his RFC finding." *Id.* at 21. In response, the Commissioner argues that the ALJ only gave substantial weight to Dr. Brosch's opinion that Mr. Henderson "could follow and understand simple directions" and that the ALJ was not required to give weight to all of her opinions. Def.'s Combined Mem. and Opp'n at 16–17. Moreover, the Commissioner contends that the RFC accounted for Dr. Brosch's opinions. *Id.* at 17–19. The Commissioner is correct.

As part of their duty to consider all the evidence in the record, ALJs must consider and evaluate all medical opinions received based on several factors, including but not limited to the examining relationship, treatment relationship, length of treatment relationship, frequency of examination, nature and extent of the treatment relationship, supportability, and consistency with the rest of the record. 20 C.F.R. § 416.927(b)–(d).[10] While "ALJs need not mention every piece of evidence," a "medical opinion from an examining consultative psychologist (like [Dr. Brosch]) is not just another piece of evidence." *Walters v. Astrue*, 444 F. App'x 913, 917 (7th Cir. 2011). The agency's own regulations specify that ALJs "may not ignore these opinions and must explain

_____

[10] In his brief, Mr. Henderson cites the same provision to support his claim that the ALJ must always give "good reasons" for the weight given to opinions. The specific standard referenced by Mr. Henderson, however, applies only to treating sources, 20 C.F.R. § 416.927(c)(2), and is inapplicable here because Dr. Brosch was not a treating source but instead a consultative examiner, A.R. at 484–92. For the reasons given above, however, the ALJ still met the applicable standards for Dr. Brosch's opinions.

the weight given to these opinions in their decisions." SSR 96-6p;[11] *see Davis v. Berryhill*, 272 F.

Supp. 3d 154, 174 (D.D.C. 2017); *see also* SSR 96-8p ("The RFC assessment must always

consider and address medical source opinions. If the RFC assessment conflicts with an opinion

from a medical source, the adjudicator must explain why the opinion was not adopted.").

Unlike a treating physician's opinions, a consultative examiner's opinions, however, "are

not entitled to any presumption of weight and are therefore more easily rejected." *Johnson v.

Colvin*, 197 F. Supp. 3d 60, 74 (D.D.C. 2016). And "the ALJ has no obligation to explicitly

enumerate each of the six factors described in the Social Security regulations" when discussing

the weight given to certain opinions. *Grant v. Astrue*, 857 F. Supp. 2d 146, 155 (D.D.C. 2012).

Nevertheless, "when there is reason to believe that an ALJ ignored important evidence—as when

an ALJ fails to discuss material, conflicting evidence—error exists." *Walters*, 444 F. App'x at 917.

First, the ALJ sufficiently discussed the weight he gave to Dr. Brosch's opinion. The main

portion of the decision discussing the weight given to her opinion reads:

> The undersigned gives substantial weight to the opinion of the consultative
> examiner, Dr. Rebecca Brosch, that the claimant appears to be able to follow and
> understand simple directions (Exhibit 11F/7–8). Dr. Brosch also opined that the
> claimant was mildly to moderately limited in his ability to perform simple tasks;
> moderately limited in his ability to maintain attention and concentration; was able
> to maintain a schedule; mildly to moderately limited in his ability to learn new
> tasks; moderately to markedly limited in his ability to perform complex tasks
> independently; moderately to markedly limited in his ability to make appropriate
> decisions, relate adequately with others, and appropriately deal with stress (Exhibit
> 11F/7–8). Dr. Brosch's opinion is generally consistent with the overall record and
> gives the claimant the full benefit of the doubt regarding his mental health
> allegations. Dr. Brosch is familiar with the Social Security program and had the
> opportunity to conduct a clinical interview with the claimant prior to rendering her
> opinion.

A.R. at 21. Mr. Henderson argues that the first half of the first sentence—"The undersigned gives

---

[11] While SSR 96-6p was rescinded and replaced by SSR 17-2p as of March 27, 2017, it was
applicable in this case at the hearing and decision stage, as the hearing occurred on June 28, 2016
and the decision was dated October 26, 2016. A.R. at 13.

substantial weight to the opinion of the consultative examiner, Dr. Rebecca Brosch"—signifies that the ALJ gave her overall opinion and all her findings substantial weight. Not so. The sentence in full clarifies that the ALJ gave substantial weight to one particular opinion of Dr. Brosch: that Mr. Henderson was "able to follow and understand simple directions." *Id.* The ALJ was not required to perform "an itemized evaluation" of each of Dr. Brosch's findings. *Hartline v. Astrue*, 605 F. Supp. 2d 194, 207 (D.D.C. 2009); *see also McLaurin v. Colvin*, 121 F. Supp. 3d 134, 141 (D.D.C. 2015) ("Additionally, there is no requirement, as Plaintiff seems to argue, that the ALJ must identify in her written ruling every discrete opinion of an applicant's expert and explain the reasons for rejecting each of them." (footnote omitted)). The ALJ noted all of Dr. Brosch's findings and explained the weight he gave to her opinion, and he therefore considered sufficiently Dr. Brosch's opinion and explained his assessment of it.

Second, Mr. Henderson further contends that the weight given to Dr. Brosch's opinion, both the overall opinion and the specific opinion that Mr. Henderson was "able to follow and understand simple directions," A.R. at 490–91, was inconsistent with the ALJ's final RFC finding. Because the two were inconsistent, Mr. Henderson claims, the ALJ had a duty to explain why that was the case. Pl.'s Mot. at 21. This argument is similarly unavailing because the ALJ's RFC finding accounted for Dr. Brosch's opinion. The ALJ's RFC finding stated that Mr. Henderson was "limited to simple, routine tasks, with a specific vocational preparation of 2 or below, with few workplace changes." A.R. at 18. He further found that Mr. Henderson could "have occasional interaction with co-workers and supervisors, but can never interact with the general public," and that he "should not engage in any tandem, team, or group work activity." *Id.*

The ALJ's RFC finding noted significant limitations that are consistent with Dr. Brosch's opinions. For example, Dr. Brosch opined that Mr. Henderson was mildly to moderately limited

in his ability to perform simple tasks, A.R. at 491, and the RFC finding reflects that by limiting Mr. Henderson to "simple, routine tasks, with a specific vocational preparation of 2 or below," *id.* at 18. This also reflected Dr. Brosch's noted moderate limitation on maintaining attention and concentration, mild to moderate limitation to learn new tasks, marked limitation to make appropriate decisions and appropriately deal with stress, and moderate to marked limitation in his ability to perform complex tasks on his own. *Id.* at 491. The social limitations listed by the ALJ further reflect Dr. Brosch's opinions that Mr. Henderson was markedly limited in his ability to "relate adequately with others." *Id.* Together, all the limitations in the RFC finding accounted for Dr. Brosch's opinions.[12] *Cf. Holland v. Berryhill*, 273 F. Supp. 3d 55, 65 (D.D.C. 2017) (finding that ALJ's finding limiting claimant to "jobs that involve simple instructions, limited contact with others, and allowed him to be off-task up to five percent of the workday due to his problems related to focus and concentration" sufficiently accounted for his "mental impairments that affect his ability to concentrate and interact with others"); *Cunningham v. Colvin*, 46 F. Supp. 3d 26, 35 (D.D.C. 2014) (finding that ALJ "clearly considered" psychiatric evaluator's conclusions along with other evidence in record, including day-to-day activities, and therefore RFC finding was

---

[12] Citing SSR 85-15, Mr. Henderson argues that "unambiguous Agency policy states that the ability to adapt to the demands or 'stress' of the workplace is not necessarily accounted for by reducing the individual to a lower stress level." Pl.'s Mot. at 22. He is correct that SSR 85-15 explains that "[a]ny impairment-related limitations created by an individual's response to demands of work . . . must be reflected in the RFC assessment." SSR 85-15. He is also correct that SSR 85-15 recognizes that some "mentally impaired persons" may struggle in unskilled jobs due to limitations in handling stress and pressure. *Id.* However, neither SSR 85-15 nor any other authority relied upon by Mr. Henderson specifies that an ALJ must make any particular RFC finding if the claimant has limitations in dealing with stress. In fact, when discussing the impact of stress and mental illness, SSR 85-15 clarifies that it "is not intended to set out any presumptive limitations for disorders, but to emphasize the importance of thoroughness in evaluation on an individualized basis." *Id.* Considering the ALJ's comprehensive discussion of Mr. Henderson's mental limitations and the evidence in the record discussed above, the ALJ was sufficiently thorough here.

consistent with record and supported by substantial evidence).

To the extent that the ALJ's RFC finding could potentially be viewed as inconsistent with Dr. Brosch's opinion, the ALJ explained his determination of Mr. Henderson's mental limitations in other portions of his decision as well. For instance, when discussing Mr. Henderson's claim of affective disorder, the ALJ noted that he "has never received any mental health treatment and [was] not taking any mental health medication, which [was] inconsistent with his allegations." A.R. at 20. The ALJ explained that Mr. Henderson worked in 2011, despite originally having an onset date in 2009, and did not provide any medical evidence suggesting that his symptoms worsened at that point. *Id.* These facts, plus others, suggested to the ALJ that "his symptoms may not be as severe as has been alleged." *Id.* In his step three analysis, moreover, the ALJ provided information that he saw as undercutting Mr. Henderson's mental health claims, including that Mr. Henderson performed light household chores, was able to go shopping, handled his finances on his own, went to church twice a week, spent time with his family, had never been laid off for not getting along with others, handled changes in routine well, was able to finish what he started, and did well with both spoken and written instructions. *Id.* at 17; *see also Holland*, 273 F. Supp. 3d at 64 ("When evaluating a claimant's testimony about his functional capacity, an ALJ may take into account the claimant's level of daily activity."). The ALJ therefore sufficiently explained any potential inconsistency between his RFC finding and Dr. Brosch's opinion.

In short, the ALJ evaluated the evidence in the record regarding Mr. Henderson's mental impairments, explained the persuasiveness of the evidence and of Dr. Brosch's opinion, incorporated Dr. Brosch's findings into his RFC finding, and explained any potential inconsistencies between his finding and Dr. Brosch's opinion. The Court cannot "reweigh the evidence and replace the [SSA Commissioner's] judgment regarding the weight of the evidence

with its own." *Cunningham v. Colvin*, 46 F. Supp. 3d at 36 (internal quotation marks omitted) (quoting *Brown v. Barnhart*, 370 F. Supp. 2d 286, 288 (D.D.C. 2005)). The ALJ ultimately provided a "logical bridge" from Dr. Brosch's opinion to his ultimate RFC finding as required and his finding on Mr. Henderson's mental impairments and RFC finding were supported by substantial evidence. *Lane-Rauth*, 437 F. Supp. 2d at 67.

### C. The ALJ's Failure to Address or Consider Dr. Aleskow's Testimony

Mr. Henderson's third argument is that the ALJ failed to make any finding regarding his tremors during step two, which impacted the ultimate step five finding, and that the ALJ's reasoning was deficient because he "fail[ed] to discuss numerous § 416.927(c) factors that [were] plainly relevant here." Pl.'s Mot. at 25. As part of this argument, he also claims that the ALJ erred by not considering Dr. Aleskow's report or weighing his opinion and by only briefly addressing Dr. Taubin's report. *Id.* at 26. While he ALJ did not discuss Dr. Aleskow's report at length, when his decision is read as a whole, it is clear that the ALJ thoroughly considered the consultative examiners' opinions as to Mr. Henderson's tremors and sufficiently explained why he found their opinions to not be well-supported or consistent with other evidence in the record. *See Keene v. Berryhill*, 732 F. App'x 174, 177 (4th Cir. 2018) ("We must read the ALJ's decision as a whole."); *Fullen v. Comm'r of Soc. Sec.*, 705 F. App'x 121, 124 (3d Cir. 2017) (stating that ALJ's decision must be read "as a whole"); *Summers v. Colvin*, 634 F. App'x 590, 593 (7th Cir. 2016) (explaining that court reads ALJ's decision "as a whole").

First, the ALJ satisfied his duty to consider all evidence in the record, including medical opinions, and did not overlook Dr. Aleskow's report. *See* 20 C.F.R. § 416.927(b)–(d); SSR 96-8p. The ALJ's decision here explicitly referenced Dr. Aleskow's report, such as in the context of what Mr. Henderson told the physician. *See, e.g.*, A.R. at 19 ("However, [Mr. Henderson] reported to

the consultative examiner Dr. Aleskow that he is able to sit for 45 minutes at a time, stand for 10–15 minutes, walk a ¼ block, and lift up to 10 pounds (Exhibit 7F/4).").  The ALJ also cited to the report throughout his decision.  *See id.* at 16, 19, 20, 21 (all citing Exhibit 7F, Dr. Aleskow's report).  These citations demonstrate that the ALJ properly considered, and did not overlook or ignore, Dr. Aleskow's report.

Moreover, Dr. Taubin's opinion on Mr. Henderson's tremors—which the ALJ did address at length—mirrored that of Dr. Aleskow.  For instance, Dr. Aleskow noted that Mr. Henderson had a resting tremor of unknown etiology that was worse on the right than the left and that led to him having some difficulties with fine motor skills, such as fastening or snapping buttons.  *See id.* at 443–46 (mentioning tremors throughout).[13]  Dr. Taubin similarly noted that Mr. Henderson had "a fine tremor of his right hand," and a "[h]istory of a tremor," which resulted in "difficulty writing with the hand."  *Id.* at 454–55.  He also explained that Mr. Henderson had 3/5 grip on the right hand and 5/5 on the left, and that he was able to write "his name on the card with no difficulty."  *Id.* at 454. He concluded that Mr. Henderson could not "use fine dexterity because of tremor of his right hand."  *Id.* at 455.  The two physicians' opinions were thus substantially similar.

The ALJ thoroughly considered the record as to Mr. Henderson's tremors in the context of Dr. Taubin's opinion.  *See* A.R. at 21.  The ALJ ultimately gave little weight to Dr. Taubin's opinion because it was inconsistent with his own observations and the record as a whole.  *Id.*  The ALJ also gave partial weight to the opinions of the State agency physical consultants, who opined that Mr. Henderson could "occasionally handle and finger, but frequently feel," which he found consistent with the record.  *Id.* at 20.  The ALJ cited in his decision to numerous medical records that were

---

[13] Dr. Aleskow did not explain whether some of this information, including the checklist on which he noted that Mr. Henderson was unable to fasten buttons or snaps, was based on Mr. Henderson's reporting or on some other source, such as an examination.  *See, e.g.*, A.R. at 446.

consistent with his rejection of Dr. Taubin's opinion, which was substantially similar to Dr. Aleskow's opinion. *See id.* at 21 (listing as examples pages from Exhibits 1F, 2F, 5F, 7F, and 8F); *see also, e.g.*, *id.* at 351 (Exhibit 1F, spine x-ray showing no degenerative changes); *id.* at 377 (Exhibit 2F, physical examination showing clear lungs, normal gait, that he was fully oriented, and that he had no clubbing or other issues in extremities); *id.* at 422 (Exhibit 5F, treatment notes explaining that full radiographic workup showed no significant degenerative changes in spine). The ALJ further pointed out other inconsistencies with Dr. Taubin's (and by extension Dr. Aleskow's) opinion throughout his decision, including his discussion of Mr. Henderson's day-to-day activities. *See, e.g.*, *id.* at 17. And, importantly, his RFC finding ultimately did limit Dr. Henderson to "frequent," rather than constant, "fine manipulation and gross handling," which incorporated the credited evidence regarding Mr. Henderson's dexterity. *Id.* at 18. Even if the ALJ did not explicitly discuss and assign weight to Dr. Aleskow's opinion, his decision read as a whole and the accompanying substantial medical record make clear why the ALJ found the physicians' opinions as to Mr. Henderson's tremors "not well-supported and inconsistent with other evidence in the record." *See Grant*, 857 F. Supp. 2d at 153.

Altogether, the record indicates that the ALJ comprehensively considered the evidence in the record regarding Mr. Henderson's tremors. *See id.* at 154–55 (upholding ALJ's finding that opinion was not well-supported and inconsistent based on "decision as a whole" and "substantial medical record in the case"). It is true, as Mr. Henderson argues, that the ALJ did not enumerate each of the factors listed in 20 C.F.R. § 416.927(c) for Dr. Aleskow's and Dr. Taubin's opinions. But he did not need to do so. *See Turner v. Astrue*, 710 F. Supp. 2d 95, 106 (D.D.C. 2010) ("Contrary to Turner's assertions, the ALJ was under no obligation to specifically enumerate each of the six factors described in the Social Security regulations."). Accordingly, Mr. Henderson's

arguments here fail.

## IV.  CONCLUSION

For the foregoing reasons, the Court shall **GRANT IN PART** and **DENY IN PART** Mr.

Henderson's Motion for Judgment of Reversal and **GRANT IN PART** and **DENY IN PART** the

Commissioner's Motion for Judgment of Affirmance.  In particular, the Court **REVERSES AND**

**REMANDS** the ALJ's decision as to whether Mr. Henderson's impairments prevented him from

doing other work.  The Court **DENIES** the remainder of Mr. Henderson's Motion and **AFFIRMS**

the portions of the ALJ's decision that are not being remanded.  An appropriate Order accompanies

this Memorandum Opinion.


Dated:  October 28, 2019

                                            /s/
                                    COLLEEN KOLLAR-KOTELLY
                                    United States District Judge